UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CULLAN F. MEATHE, individually and
as a shareholder in the right of Metro
Group Holding Company, Inc., a Michigan
Corporation, and its subsidiaries,                                      Case No. 11-11470
Metro Cars, Inc., n/k/a MC Cars, Inc., a
Michigan corporation, Metro Transportation,
LLC, n/k/a/ MT Transportation, LLC, a                                   HON. AVERN COHN
Michigan limited liability company, Metro
Coach, LLC, a Michigan limited liability
company, and YELLOW CAB SERVICE
CORPORATION OF FLORIDA, INC., a
Florida corporation,

          Plaintiffs,

v.

DANIEL RET, GREGORY EATON,
GREAT LAKES TRANSPORTATION
HOLDING, LLC, a Michigan limited liability
company, GARY SAKWA, GRAND/SAKWA
HOLDING, LLC, a Michigan limited liability
company, METRO CARS OF GRAND
RAPIDS, LLC, a Michigan limited liability
Company, METRO GROUP HOLDING
COMPANY, INC., a Michigan corporation, MC
CARS, Inc., f/k/a/ Metro Cars, Inc., a Michigan
corporation, MT TRANSPORTATION, LLC, f/k/a
Metro Transportation, LLC, a Michigan limited
liability company, and METRO COACH, LLC, a
Michigan limited liability company,

          Defendants.

_____/


**ORDER DENYING PLAINTIFFS' MOTION TO AMEND (Doc. 59) AND
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 34)**

# TABLE OF CONTENTS

I.  INTRODUCTION...................................................................................................... 2

II.  BACKGROUND ..................................................................................................... 3

   A.  Factual Background........................................................................................ 3

     1.  Metro Group.......................................................................................... 3

     2.  Stock Restriction and Non-Compete Agreements ........................... 4

     3.  Formation of Metro Cars of Grand Rapids ....................................... 4

     4.  Bank Group Loan ................................................................................. 5

     5.  Selling Metro Group ............................................................................ 5

     6.  Creation of Great Lakes ...................................................................... 5

     7.  Public Auction ...................................................................................... 6

     8.  Termination of Ret's Employment ..................................................... 7

     9.  Foreclosure Sale of Yellow Cab and Florida Companies................. 7

     10.  The Trademark Suit ............................................................................. 8

   B.  Procedural History ........................................................................................ 8

III.  STANDARD OF REVIEW ................................................................................... 9

   A.  Fed. R. Civ. P. 15 ........................................................................................... 9

   B.  Fed. R. Civ. P. 12(b)(6) ............................................................................... 10

   C.  Fed. R. Civ. P. 56 ......................................................................................... 11

IV.  DISCUSSION ...................................................................................................... 12

   A.  Plaintiffs' Motion to Amend ...................................................................... 12

     1.  Parties' Arguments............................................................................. 12

     2.  Analysis ............................................................................................... 13

   B.  Defendants' Motion for Summary Judgment ........................................... 14

     1.  Counts II, III, IV, and VI .................................................................... 15

        i. Parties' Arguments.......................................................................... 15

        ii. Analysis .......................................................................................... 15

     2.  Count V ............................................................................................... 19

        i. Parties' Arguments.......................................................................... 19

        ii. Analysis .......................................................................................... 20

     3.  Count XIII............................................................................................ 22

V.  CONCLUSION ..................................................................................................... 23

## I.   INTRODUCTION

This is a breach of contract and fiduciary duty case that revolves around the foreclosure sale of the assets of Metro Group Holding Company, Inc. (Metro Group), a Michigan corporation that provided for-hire transportation services in the Detroit-metropolitan area.  Since 1990, Cullan Meathe (Meathe) and Gregory Eaton (Eaton) co-owned Metro Group.   In 2004, Meathe, by himself, formed Florida companies that provided similar services in Florida.  Although Meathe was the sole owner of the Florida companies, the Michigan and Florida companies shared management staff.  To finance their operations, Meathe and Eaton obtained a common loan from a bank and used the Michigan and Florida companies as collateral.  After the loan went into default, the bank foreclosed on both the Michigan and Florida companies.  Great Lakes Transportation Holding, LLC (Great Lakes), a Michigan corporation partially owned by Eaton, purchased the assets of the Michigan companies at a UCC foreclosure sale.  Peninsula Transportation Group Enterprises, LLC ("PTG"), a Florida company owned by Meathe's relatives, purchased the assets of the Florida companies through a judicial foreclosure sale.  Meathe and his former company Yellow Cab Service Corporation of Florida, Inc. (Yellow Cab) (collectively "plaintiffs") claim breaches of fiduciary duties and other state-law violations arising out of the events leading to the foreclosure sale of Metro Group.

Plaintiffs are suing:

(1) Eaton;
(2) Daniel Ret (Ret);
(3) Great Lakes Transportation Holding, LLC (Great Lakes);
(4) Metro Group Holding Company, Inc. (Metro Group);

     (5) MC Cars, Inc., formerly Metro Cars, Inc. (MC Cars);
     (6) MT Transportation, LLC, formerly Metro Transportation, Inc. (MT);
     (7) Metro Coach, LLC (Metro Coach);
     (8) Gary Sakwa; and
     (9) Grand/Sakwa Holding, LLC.

The complaint contains thirteen counts.[1]

Now before the Court are plaintiffs' motion to amend the complaint (Doc. 59) and defendants' motion for summary judgment (Doc. 34). For the reasons that follow, plaintiffs' motion will be denied and defendants' motion will be granted.

## II.      BACKGROUND

### A. Factual Background

#### 1. Metro Group

Meathe and Eaton were co-owners of Metro Group. Since 1999, Meathe owned 49% and served as vice president and secretary, and Eaton owned 51% and served as president. Metro Group owned three subsidiaries: Metro Cars, Inc. (now known as MC Cars, Inc.), Metro Transportation, LLC (now known as MT), and Metro Coach, LLC.

---

[1] Meathe's complaint is phrased by him as follows:

| | |
|---|---|
| Count I | Shareholder Derivative Action MCL § 450.1492a |
| Count II | Breach of Non-Compete Agreement (Defendant Ret) |
| Count III | Interference with Contracts By Defendants Eaton, Sakwa, G/SH & GLTH |
| Count IV | Concert of Action/Civil Conspiracy (All Defendants) |
| Count V | Oppression of Minority Shareholder MCL § 450.1489 (Defendant Eaton) |
| Count VI | Breach of Fiduciary Duty (Defendants Ret and Eaton) |
| Count VII | Usurpation of Metro Group Opportunity (Defendants Ret and Eaton) |
| Count VIII | RICO-1 |
| Count IX | RICO-2 |
| Count X | RICO-3 |
| Count XI | Fraudulent Misrepresentation |
| Count XII | Negligent Misrepresentation |
| Count XIII | Silent Fraud |

Meathe voluntarily dismissed counts I, VII, VIII, IX, X, XI, and XII (Doc. 61).

Meathe was also 100% owner of Yellow Cab, a Florida corporation formed in 2004, which provided for-hire transportation services in the State of Florida.[2]   Ret served as chief executive officer (CEO) of Metro Cars and chief operating officer (COO) of Yellow Cab.

### 2.  Stock Restriction and Non-Compete Agreements

On September 5, 2001, Meathe and Eaton signed a stock restriction agreement that governed share transferability of Metro Group on death, incapacity, or disability. On July 26, 2003, Ret executed a non-compete agreement with Metro Group and its subsidiaries.  In the non-compete agreement, Ret agreed that during his tenure at Metro Cars, and for two-years after his departure, he would not "directly or indirectly, enter into, engage in, assist, give or lend funds to otherwise finance, any business that engaged in any business or activity which is in competition with" Metro Group or any of its subsidiaries.  Ret also agreed not to disclose any confidential information gained as a result of his employment with Metro Cars.

### 3.  Formation of Metro Cars of Grand Rapids

In 2006, Eaton and Meathe planned to service the Grand Rapids area.  To do this, they formed Metro Cars of Grand Rapids, LLC (Metro Cars – Grand Rapids). Meathe says he and Eaton agreed that they would own equal shares, but because Meathe was under federal investigation, Eaton acquired all of Metro Cars – Grand

---

[2] Yellow Cab and its subsidiaries were acquired by PTG after a judicial foreclosure sale was initiated by the Bank of Montreal.  Bank of Montreal v. Yellow Cab Service Corporation of Florida, Inc., No. 10-cv-00624 (N.D. Ill.).  As will be explained, the judicial foreclosure of the Florida companies is not an issue in this case.

Rapids' shares and promised to transfer 50% of it to Meathe in the future.  Meathe says the transfer never occurred even though the federal investigation ended in his favor.

### 4. Bank Group Loan

On August 18, 2006, Metro Group, Yellow Cab, and their subsidiaries, obtained a loan[1] from the Bank of Montreal, as administrative agent for a group of three banks (Bank Group).  The loan was secured by the assets of the Michigan and Florida companies.  In addition, Meathe provided a personal guarantee for ten million dollars ($10,000,000.00).

### 5. Selling Metro Group

In mid-2007, Meathe and Eaton considered the sale of Metro Group because of difficulty in financing the company, and trouble in the Michigan market.  Meathe and Eaton retained an investment-banking firm to explore refinancing the companies, or, possibly selling the companies and/or their subsidiaries.  At that time, the Bank Group loan was outstanding in the amount of approximately forty-four million dollars.  Metro Group received several offers to purchase its assets, including two offers made by Eaton himself; the first for twenty million dollars in August of 2008, and the second for $16.6 million in October of 2008.  However, none of these offers were accepted. Ultimately, Bank Group decided a foreclosure sale was necessary.

### 6. Creation of Great Lakes

Great Lakes was formed on June 9, 2009 for the specific purpose of purchasing

---

[1] The parties have not identified the amount of the original loan and could not do so at oral argument.

the assets of Metro Group.  Great Lakes is owned by three holding companies, which are, in turn, owned by Eaton, Sakwa, and Ret.  Today, Great Lakes engages in the business of providing for-hire transportation services in the state of Michigan.  Great Lakes additionally provides its services in other states through contracts with affiliate companies.

### 7.  Public Auction

In 2007, Metro Group and Yellow Cab defaulted on the Bank Group loan which had an October 31, 2008 maturity date.  From January 31, 2007 through July 15, 2008, however, Bank Group waived the default.  On January 2, 2009, Metro Group and Yellow Cab remained in default, and Bank Group initiated foreclosure proceedings of Metro Group under the Uniform Commercial Code (UCC).

Before the UCC foreclosure sale, on June 11, 2009, Bank Group tentatively accepted an offer made by Eaton to acquire Metro Group's assets.  Defendants say this was done to ensure a bid at the auction.  Meathe says the process was rigged.

Meathe was aware that Eaton was a qualified bidder at the auction and that he made offers to acquire Metro Group's assets before the auction.  Meathe, however, did not know that Ret and Sakwa had formed Great Lakes with Eaton to become involved with the bid.  Further, Meathe unsuccessfully attempted to become a qualified bidder at the auction.  Meathe says Eaton threatened Bank Group to withdraw his bid if Meathe became a qualified bidder.

Before the auction occurred, Eaton gifted forty-nine percent of Metro Cars – Grand Rapids to Ret and Sakwa.  Meathe says Ret's and Sakwa's percentage was

wrongfully taken from the fifty-percent he was supposed to get.

The auction took place on July 13, 2009.  At the auction, there were two bidders, Trowbridge Partners, LLC (Trowbridge) and Great Lakes.  Great Lakes submitted the first acceptable bid in the amount of $3,627,000.  Trowbridge responded and submitted a bid for $3,677,000.  Finally, Great Lakes submitted the last bid in the amount of $3,727,000.  Trowbridge refused to bid any higher and claimed that Great Lakes was not a qualified bidder because Ret, who was part owner of Great Lakes, had a non-compete agreement with Metro Group.  However, Bank Group rejected Trowbridge's claim and accepted Great Lakes' bid of $3,727,000.  Of the assets of Metro Group subject to the auction, $2,127,000 reflects cash on deposit with the Wayne County Airport Authority.

### 8.  Termination of Ret's Employment

The parties dispute when Ret's employment with Yellow Cab terminated. Defendants say Ret's employment with Yellow Cab terminated in August of 2008; Meathe says it terminated in July of 2008.  The difference is not material.  The parties agree that Ret resigned as CEO of Metro Cars in September of 2008.

Meathe says Ret immediately began working for Sakwa and Grand Sakwa Holding, LLC on his resignation.  Further, Meathe says Eaton, acting for himself as the agent of Metro Group, released Ret from the non-compete agreement that was signed when Ret was CEO of Metro Cars.

### 9.  Foreclosure Sale of Yellow Cab and Florida Companies

On or about September 15, 2010, Bank Group foreclosed on the Florida

7

companies through judicial action, and all of the companies' assets were sold.  Bank of Montreal v. Yellow Cab Service Corporation of Florida, Inc., No. 10-cv-00624 (N.D. Ill.).  Through a settlement agreement, the assets of the Florida companies were sold to PTG, a company owned by the Jean Meathe Irrevocable Trust (98%) and Traver Meathe (2%).  Bank Group's foreclosure on the Florida companies is not an issue in this case.

### 10. The Trademark Suit

On February 12, 2010, before this case was filed, defendant Great Lakes filed suit against Meathe, Yellow Cab, and Meathe's other businesses, in Florida (the "trademark case"), claiming trademark infringement and dilution, as well as unfair competition and unjust enrichment.  Great Lakes alleged Meathe and others were wrongfully using its "METRO CARS" service mark in advertising materials on vehicles, web sites, and other promotional materials.  The trademark case was transferred to this Court on January 30, 2012, and is currently pending.  *Great Lakes Transportation Holding, LLC, d/b/a/ Metro Cars, Plaintiff, versus Yellow Cab Service Corporation of Florida, Inc., et al., Defendants*, No. 9:10-cv-80241 (SD Fla.), No. 12-10497 (E.D. Mich.).

### B.  Procedural History

Plaintiffs filed the complaint in this case on April 7, 2011 (Doc. 1).  On June 30, 2011, the Court entered an order, *sua sponte*, staying the case because of the pending trademark case (Doc. 26).  The trademark case was transferred to this Court on January 30, 2012.  The Court held a status conference in this case on March 6, 2012

8

and lifted the stay. Defendants' answer was filed on the same day (Doc. 32). On March 13, 2012, defendants filed a motion for summary judgment (Doc. 34) and plaintiffs filed a motion to disqualify defendants' counsel (Doc. 36). The Court directed the parties not to file any papers until the disqualification issue was resolved. On May 10, 2012, the court denied plaintiffs' motion to disqualify defendants' counsel (Doc. 57). On June 6, 2012, plaintiffs filed a response to defendants' motion for summary judgment (Doc. 61), as well as a motion to amend the complaint (Doc. 59). Defendants filed a reply to the motion for summary judgment (Doc. 64) and a response to plaintiffs' motion to amend (Doc. 65).

### III.    STANDARD OF REVIEW
#### A. Fed. R. Civ. P. 15

Fed. R. Civ. P. 15(a)(2) allows a party to amend its complaint after a responsive pleading has been filed, with written consent of the opposing party or the court's leave. "The court should freely give leave when justice so requires." Fed. R. Ci. P. 15(a)(2). Although Rule 15 states that leave "shall be freely given" when the underlying facts would support a claim, grounds for denying a motion for leave to amend include undue delay, bad faith or dilatory motive on the part of the movant, failure to cure deficiencies by amendments previously allowed, lack of notice to the opposing party, prejudice to the opposing party, and futility of the amendment. Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1001 (6th Cir. 2005).

The decision whether or not to permit the amendment is committed to the discretion of the trial court. See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,

401 U.S. 321, 330-32 (1971); Estes v. Kentucky Util. Co., 636 F.2d 1131, 1133 (6th Cir. 1980). This discretion, however, is "limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits," rather than the technicalities of pleadings. Marks v. Shell Oil Co., 830 F.2d 68, 69 (6th Cir. 1987) (citation omitted); Tefft v. Seward, 689 F.2d 637, 639 (6th Cir. 1982)). When denying a motion to amend, a court must find "at least some significant showing of prejudice to the opponent." Moore v. City of Paducah, 790 F.2d 557, 562 (6th Cir. 1986). Delay to the other party, standing alone, is not enough to bar the amendment if the other party is not prejudiced. Id. (citation omitted). However, the Sixth Circuit has recognized that "allowing an amendment after the close of discovery creates significant prejudice. Duggins v. Steak "N Shake, Inc., 195 F.3d 828, 834 (citing Moore, 780 F.2d at 560).

Moreover, proper grounds to deny a motion to amend exist if the amendment would be futile. Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417, 420 (6th Cir. 2000). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." Riverview Health Inst., LLC v. Med. Mut. of Ohio, 601 F.3d 505 (6th Cir. 2010) (citation and internal quotations omitted).

### B. Fed. R. Civ. P. 12(b)(6)

Because an amendment is futile if it cannot withstand a motion to dismiss, the Court will consider plaintiffs' motion under Fed. R. Civ. P. 12(b)(6). A Fed. R. Civ. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. In reviewing a motion to dismiss, "the court must construe the

complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief."  Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001).  The court is not required to accept as true legal conclusions, conclusory statements, or mere recitations of the elements of a cause of action.  Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).  Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citation omitted).

"To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'"  Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 319 (6th Cir. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).  The plaintiff must "state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief."  Fabian v. Fuller Helmets, Inc., 628 F.3d 278, 280 (6th Cir. 2010) (citing Iqbal, 556 U.S. at 677).  The Court must "draw on its judicial experience and common sense" in determining whether a claim is plausible. Iqbal, 556 U.S. at 679.

## C.  Fed. R. Civ. P. 56

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set out specific facts showing a genuine issue for trial. <u>Chappell v. City of Cleveland</u>, 585 F.3d 901, 906 (6th Cir. 2009). The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." <u>Hawkins v. Anheuser-Busch, Inc.</u>, 517 F.3d 321, 332 (6th Cir. 2008). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

## IV. DISCUSSION

### A. Plaintiffs' Motion to Amend

Plaintiffs seek leave to amend the complaint by (1) adding two new counts: the first for declaratory judgment and the second for breach of contract; and (2) modifying count XIII (silent fraud).

### 1. Parties' Arguments

Plaintiffs state three reasons why defendants will not be prejudiced to support amendments to the complaint. First, defendants only recently filed an answer to the complaint. Second, the Court prohibited all filings until plaintiffs' motion to disqualify defendants' counsel was resolved. This occurred on May 10, 2012. Finally, discovery

has yet begun.  Plaintiffs essentially say defendants will be in the same position should the Court grant the motion to amend.

Defendants respond that plaintiffs' motion should be denied because the underlying facts on which the motion relies were well-known to plaintiffs at the outset of the case.  Plaintiffs' decision to file the motion to amend, according to defendants, is simply to multiply the proceedings, obstruct the course of the case, and delay resolution.  In addition, defendants say plaintiffs' amended complaint as well as the case are futile.

### 2.  Analysis

Plaintiffs' amendments are futile.  First, plaintiffs seek to add a claim for "declaratory judgment regarding acquiescence and laches."  In this claim, plaintiffs seek a declaration that plaintiffs are entitled to use the "METRO CARS FL" service mark. Plaintiffs have raised the same issues in the trademark case.[3]  Second, plaintiffs move to add a breach of contract claim for defendant Eaton's alleged failure to transfer a one-half interest of Metro Cars – Grand Rapids to plaintiff Meathe.  Plaintiffs' claim does not survive the pleading standards required in Iqbal, *supra.*  Indeed, plaintiff merely recites that Eaton promised, and failed to, transfer a one-half interest of Metro Cars – Grand Rapids to Meathe.  There is nothing to support plaintiffs' bare-boned allegation.  Mere recitations of the elements of a cause of action do not survive Rule 12(b)(6)'s pleading standards.

---

[3] This claim is fully analyzed in the trademark case.  Plaintiffs, well aware that this claim does not belong in this case, are unnecessarily multiplying the issues.

Further, plaintiffs' proposed breach of contract claim is factually distinct from the remaining claims.  Dealing with a similar situation where a motion to amend was filed in response to a summary judgment motion, the Sixth Circuit affirmed the district court's denial of the motion:

> Here, the factors favor denial of the motion.  It is not clear why [plaintiff] waited until his summary judgment response to attempt to add the new claims.  The facts underlying the two new claims at issue on appeal were known to [plaintiff] at the time of the complaint.  [Plaintiff] did not include them then, nor did he include them in a prior amendment to the original complaint.  Because the new claims are factually distinct from the original claims, [defendant] had no notice that it would have to defend against such allegations.  Further [defendant] was prejudiced by [plaintiff's] late action, because it had no opportunity to collect evidence in its defense against such claims during the discovery phase and has already filed its summary judgment motion.

Desparois v. Perrysburg Exempted Village Sch. Dist., No. 10-3158, 455 F. App'x 569 (6th Cir. Jan. 13, 2012) (unreported).  Thus, not only is the breach of contract claim futile, but also it is an improper response to defendants' motion for summary judgment.

Finally, as discussed more fully below, plaintiffs' silent fraud claim is essentially a claim that defendants defrauded Metro Group.  Plaintiffs lack standing to assert the rights of Metro Group.

In sum, plaintiffs' motion to amend is futile.  In addition, the amendments appear to be a continued effort by plaintiffs to delay adjudication and unduly burden defendants.  Therefore, the motion will be denied.

## B.  Defendants' Motion for Summary Judgment

14

Plaintiffs concede to dismissal of seven counts of the complaint (Doc. 61),[4] leaving six counts remaining:

| | |
|---|---|
| Count II | Breach of Non-Compete Agreement (Defendant Ret) |
| Count III | Interference with Contracts By Defendants Eaton, Sakwa, G/SH & GLTH |
| Count IV | Concert of Action/Civil Conspiracy (All Defendants) |
| Count V | Oppression of Minority Shareholder MCL § 450.1489 (Defendant Eaton) |
| Count VI | Breach of Fiduciary Duty (Defendants Ret and Eaton) |
| Count XIII | Silent Fraud |

The Court addresses these claims below.

## 1. Counts II, III, IV, and VI

### i. Parties' Arguments

In count II, plaintiffs allege that Ret breached his non-compete agreement with Metro Group.  Count III alleges defendants interfered with the non-compete agreement and stock-restriction agreement, both Metro Group contracts.  Count IV states a claim for lost profits and opportunities resulting from defendants' alleged concerted tortious conduct.  Finally, count VI alleges breach of fiduciary duties owed to Meathe by defendants Ret and Eaton.  In order to survive summary judgment on these claims, plaintiffs must establish standing.

### ii. Analysis

It is well-settled under Michigan law that "a suit to enforce corporate rights or to

---

[4] Because plaintiffs do not respond to defendants' motion for summary judgment regarding these seven counts, summary judgment is GRANTED and counts I (shareholder derivative action), VII (usurpation of Metro Group opportunity), VIII (Rico-1), IX (Rico-2), X (Rico-3), XI (fraudulent misrepresentation), and XII (negligent misrepresentation) are DISMISSED.

redress or prevent injury to a corporation, whether arising from a contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee." <u>Belle Isle Grill Corp. v. Detroit</u>, 256 Mich. App. 463, 474 (2003). Nonetheless, two exceptions allow for a shareholder to bring suit on his own behalf. <u>Id.</u> First, if the shareholder has suffered a loss "separate and distinct from that of other stockholders generally," he may bring suit individually. <u>Christner v. Anderson, Nietzke & Co., P.C.</u>, 433 Mich. 1, 9 (1989) (citation and internal quotation omitted). Second, a shareholder may file an individual suit if he can show a duty owed directly to him independent of any duty owed to the corporation. <u>Belle Isle Grill Corp.</u>, 256 Mich. App. at 474 (citing <u>Mich. Nat'l Bank v. Mudgett</u>, 178 Mich. App. 677, 679 (1989)). "Thus, where the alleged injury to the individual results only from the injury to the corporation, the injury is merely derivative and the individual does not have a right of action against the third party." <u>Mudgett</u>, 178 Mich. App. at 680.

In <u>Lozowski v. Benedict</u>, an unreported Michigan Court of Appeals case, the plaintiff brought an action claiming minority shareholder oppression, breach of fiduciary duty, and breach of contract. No. 257219, 2006 WL 287406, at *1 (Mich. Ct. App., Feb. 7, 2006). The circuit court granted summary disposition on the fiduciary duty and contract claims because "plaintiff's claims were derivative to those of the corporation and should have been brought as a shareholder derivative action, rather than by plaintiff in his individual capacity." <u>Id.</u> The court of appeals affirmed the decision and concluded:

> [R]egardless of whether plaintiff suffered an injury, each of the complaint's allegations refers to breaches and injuries to the *corporation or all shareholders*. In the complaint, plaintiff

16

> simply offers no basis for his alleged injuries independent of the alleged harm to the corporate entity; the complaint asserts neither that defendants owed him a personal duty independent of what they owed to the corporation as shareholders, nor that he suffered some individualized injury distinct from the harm that defendants allegedly inflicted on the corporation.  Because the exceptions allowing individual shareholders to sue individually do not apply when the acts complained of result in damage both to the corporation and to the individual, <u>Michigan Nat'l Bank</u>, *supra* at 679-680, we conclude that the circuit court correctly found that plaintiff's breach of contract and breach of fiduciary duty claims failed to state an actionable individual injury.

<u>Id.</u> at *3.

Here, plaintiffs offer no basis for their alleged injuries independent of the alleged harm to Metro Group.   Count II alleges defendant Ret breached a non-compete agreement he entered into with Metro Group.   Count III alleges defendants interfered with two contracts: first, the non-compete agreement between Ret and Metro Group; and second, the stock restriction agreement between Eaton and Meathe.  Both counts allege injuries to Metro Group rather than an individualized shareholder injury.

By signing the non-compete agreement, Ret agreed not to compete with, or divulge confidential information of, Metro Group, not Meathe personally.  Plaintiffs seek to circumvent the standing requirement by saying Meathe was a third-party beneficiary to the non-compete agreement.   However, if the Court applies plaintiffs' reasoning, Michigan courts would not require a shareholder to prove an "individualized" injury before bringing a non-derivative suit.  In effect, every shareholder can argue that he is a beneficiary of his company's contracts.  The non-compete agreement is clearly titled "Non-Competition, Non-Solicitation and Confidentiality Agreement For Employees of Metro Group Holding Company Subsidiaries."  The terms of the agreement prevented

17

Ret from competing with *Metro Group*, not Meathe individually.  Accordingly, plaintiffs fail to allege an individualized injury and lack standing to assert count II.

Similarly, the stock-restriction agreement, although entered into between Meathe and Eaton as shareholders, was a Metro Group contract.  By its very terms, the agreement addresses Metro Group's rights, as a company, to control transfer of shares. Indeed, the agreement creates rights for the company, not the individual shareholders:

> 10.2 **Failure to Transfer Shares**: In the event that a Shareholder . . . , upon the occurrence of any of the events requiring the redemption of Stock *by the remaining Shareholder(s) Corporation* pursuant to this Agreement, neglects, fails, or refuses to surrender the Stock to be redeemed . . . , *then the Corporation may deposit the redemption price for each share.* . . .

Although it addresses share transferability among shareholders, it is the company that is given rights to act through the agreement, and it is the company that was injured, not Meathe individually.  Consequently, plaintiffs lack standing to assert count III.[5]

Finally, counts IV and VI allege breaches of certain fiduciary duties owed to Meathe personally.  In count IV, plaintiffs state, "As a direct and proximate result of this concert of action and civil conspiracy, Plaintiff Meathe and Metro Group were damaged

---

[5] The Court also notes that plaintiffs take the agreement out of context.  The agreement was intended to address transfer of stock of a retiring, deceased, or incapacitated shareholder:

> WHEREAS, the Shareholders believe it to be in their best interests and in the best interests of the Corporation, and the officers and Directors of the Corporation believe it to be in their best interests that the *stock of a retiring, deceased or incapacitated Shareholder* be acquired by the surviving Shareholder or the Corporation; and
> WHEREAS, the Shareholders have unanimously determined that this contract shall govern the transferability of their shares[.]

in the manner herein set forth, including lost profits and opportunities from the operation of Metro Group as a going concern."  In count VI, plaintiffs say defendants Ret's and Eaton's breach of fiduciary duties resulted in damage to Metro Group and Meathe.  However, defendants correctly note that plaintiffs' alleged injuries boil down to one claim: defendants' actions led to a diminution in the value of Metro Group's assets, thereby affecting Meathe as a shareholder.  The injury claimed is not independent of the alleged harm to Metro Group.  Thus, plaintiffs lack standing to assert counts IV and VI.

### 2.  Count V

### i. Parties' Arguments

Count V alleges minority shareholder oppression under Michigan law.  The claim against Eaton is based on the following actions:

> Eaton signed a letter with Bank Group to purchase Metro Group's assets;

> Two weeks later, Eaton and Ret terminated Ret's non-compete agreement, allegedly without Meathe's consent;

> While Eaton remained controlling shareholder of Metro Group, he gifted 50% ownership of Metro Cars – Grand Rapids to Ret and Sakwa;

> Eaton, Ret, and Sakwa then acquired the assets of Metro Group at the public auction.

Defendants say they are entitled to summary judgment because "a majority shareholder of a corporation only owes the minority a fiduciary duty in the exercise of a majority's shareholder rights."  Here, defendants say none of Eaton's actions were taken as a majority shareholder in Metro Group.  Moreover, defendants say plaintiffs' claim is barred by the statute of limitations.

19

### ii. Analysis

Under M.C.L. § 450.1489(1), a shareholder may bring an action against "directors or those in control of the corporation" for "illegal, fraudulent, or willfully unfair and oppressive" conduct to the corporation or to the shareholder. Willfully unfair and oppressive conduct is defined as "a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the shareholder as a shareholder." M.C.L. § 450.1489(3). A claim of oppression is a direct cause of action, not derivative. Estes v. Idea Eng'g & Fabrications, Inc., 250 Mich. App. 270, 278 (2002). The statute also provides that, "An action seeking an award of damages must be commenced within 3 years after the cause of action under this section has accrued, or within 2 years after the shareholder discovers or reasonably should have discovered the cause of action under this section, whichever occurs first." M.C.L. § 450.1489(1)(f).

In Estes, the Michigan Court of Appeals held that a six-year period of limitation contained in a residual statute applies to equitable claims brought under M.C.L. § 450.1489. 250 Mich. App. at 286. Plaintiffs rely on Estes to say their claim is timely. More recently, in an unpublished case, the court of appeals recognized that the legislature added M.C.L. § 450.1489(1)(f) to provide a limitations period for claims requesting damages as opposed to equitable relief:

> Under Estes . . ., this Court held that the residual catch-all, six year limitation period in MCL 600.5813 applies to claims under MCL 450.1489. However, in 2001 PA 57, the Legislature added MCL 450.1489(1)(f) that provides a two-year limitation period from discovery for claims requesting damages. But, as plaintiff argues, the amendment did not specifically address the limitation period for claims seeking equitable relief. Accordingly, the residual six-year limitation period in MCL 600.5813 presumably applies to plaintiff's

20

claim insofar as he requests equitable relief instead of damages.

Irish v. Natural Gas Compression Sys., Inc., No. 266021, 2006 WL 2000132, at *3 (Mich. Ct. App., July 18, 2006).  The court of appeals in Irish reasoned that the two-year limitation period applied to the plaintiff because he requested his shares be purchased at "fair value," which was essentially a claim for damages.  Id.

Moreover, in order to bring a claim for shareholder oppression, the party asserting the claim "is still required to be a current shareholder rather than a former shareholder," similar to a derivative shareholder lawsuit.  McCarthy v. Miller, No. 231829, 2003 WL462436, at *2 (Mich. Ct. App. 2003).  Indeed, the court of appeals reasoned that M.C.L. § 450.1109(1) defines shareholder as a "person holding units of proprietary interest in a corporation. . . ."  Id.  "The plain and ordinary language of the statute, i.e. 'person holding units,' indicates that the shareholder must be a current shareholder."  Id. (citing Sun Valley Foods Co. v. Ward, 460 Mich. 230, 236 (1999)).  The court of appeals distinguished the words "holding" and "hold," reasoning that "holding" "indicates something that is occurring in the present rather than the past."  Id. (citation omitted).  Thus, to bring a claim under M.C.L. § 450.1489, a shareholder must own shares at the time of the lawsuit.  Id.

Here, even if Meathe can establish willfully unfair and oppressive conduct that occurred within the two-year statute of limitations, he lacks standing to bring suit.  As discussed above, in order to bring a claim for shareholder oppression, the plaintiff must presently be a shareholder.  Because Meathe is not a shareholder in the now-dissolved company, he cannot bring a claim under M.C.L. § 450.1489.

21

### 3.  Count XIII

Plaintiffs count XIII alleges silent fraud based on Eaton and Ret's failure to disclose material information.  The complaint states that Eaton and Ret "kept secret the fact that they were conspiring with Defendants Sakwa, G/SH, and GLTH to first devalue the assets of Metro Group, discourage any prospective third party purchasers, and then purchase the business of Metro Group for themselves."

In order to make a claim for silent fraud under Michigan law, a plaintiff must establish actionable fraud, i.e. silence under circumstances where there is a legal duty of disclosure.  M&D, Inc. v. W.B. McConkey, 231 Mich. App. 22, 37 (1998).  Defendants correctly state that plaintiffs' generalized and conclusory allegations do not describe any fraud with particularity.  In other words, plaintiffs' complaint fails to point to specific instances where defendants were required to disclose something by law but didn't.

Even if plaintiffs could point to specific instances where defendants failed to disclose material information, as was attempted in the amended complaint, plaintiffs lack standing to assert this claim.  The essence of plaintiffs' silent fraud claim is that defendants failed to provide Meathe with information they had a legal duty to provide. Plaintiffs, however, have not explained how Meathe was injured as an individual, rather than as a shareholder of Metro Group.  Plaintiffs' underlying claim is that defendants' non-disclosures led to a diminution of the value of Metro Group's assets.  As explained above, plaintiffs have not established an individualized injury and lack standing to assert Metro Group's rights.  See, e.g., Belle Isle Grill Corp., 256 Mich. App. at 474.  Thus, the silent fraud claim will be dismissed.

**V.      CONCLUSION**

For the reasons above, plaintiffs' motion to amend is DENIED and defendants'

motion for summary judgment is GRANTED.  The case is DISMISSED.

SO ORDERED.

s/Avern Cohn
Avern Cohn
United States District Judge

Dated:  October 11, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of
record on October 11, 2012, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager

23