# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |
|---|---|---|

Filed: October 29, 2013

Mr. Samuel C. Damren
Mr. J. David Garcia
Mr. Benjamin W. Jeffers
Mr. Jason D. Killips
Mr. Andrew Jason Kolozsvary
Ms. Terry Milne Osgood
Mr. Marc E. Thomas
Mr. Rodger D. Young

Re: Case No. 12-2479/12-2507, *Cullan Meathe, et al v. Daniel Ret, et al*
Originating Case No. : 2:11-cv-11470

Dear Counsel,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Amy E. Gigliotti for
Robin Johnson, Case Manager
Direct Dial No. 513-564-7039

cc: Mr. David J. Weaver

Enclosure

Mandate to issue

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0925n.06

Nos. 12-2479, 12-2507

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

| | |
|---|---|
| CULLAN F. MEATHE, individually and as a shareholder in the right of Metro Group Holding Company, Inc., a Michigan corporation, and its subsidiaries, Metro Cars, Inc., n/k/a MC Cars, Inc., a Michigan corporation, Metro Transportation, LLC, n/k/a MT Transportation, LLC, a Michigan limited liability company, Metro Coach, LLC, a Michigan limited liability company; AND YELLOW CAB SERVICE CORPORATION OF FLORIDA, a Florida corporation,<br><br>    Plaintiffs-Appellants<br>    Cross-Appellees,<br><br>v.<br><br>DANIEL RET; A. GREGORY EATON; GREAT LAKES TRANSPORTATION HOLDING, a Michigan limited liability company; GARY SAKWA; GRAND/SAKWA HOLDING; METRO CARS OF GRAND RAPIDS, a Michigan corporation; METRO GROUP HOLDING COMPANY; MC CARS, INC., fka Metro Cars, Inc.; MT TRANSPORTATION, LLC, fka Metro Transportation, LLC, a Michigan limited liability company; AND METRO COACH, a Michigan limited liability company,<br><br>    Defendants-Appellees<br>    Cross-Appellants. | **FILED**<br><br>OCT **29** 2013<br><br>DEBORAH S. HUNT, Clerk<br><br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

BEFORE: ROGERS, GRIFFIN, and DONALD, Circuit Judges.

*Nos. 12-2479, 12-2507*
*Meathe, et al. v. Ret, et al.*

ROGERS, Circuit Judge. Plaintiff Cullan Meathe appeals the district court's grant of summary judgment in this direct shareholder suit alleging breach of fiduciary duty, breach of contract, silent fraud, civil conspiracy, and minority shareholder oppression. Meathe argues that the district court erred in holding that he did not have standing to pursue his claims. The defendants filed a cross-appeal alleging that the district court erred in not considering whether to impose sanctions against Meathe's counsel, even though the district court had on multiple occasions opined that the Meathe's case was frivolous. Because Meathe should have brought most of his claims in a derivative action and he failed to allege an injury for which the court could provide a remedy, the district court properly dismissed the entire case on summary judgment. However, because the defendants raised the issue of sanctions, which had been placed squarely before the district court in the defendants' response in opposition to a motion for leave to amend, the district court should have at least briefly considered the issue.

Metro Group Holding Company, Inc. is a dissolved corporation that provided for-hire transportation services through various "Metro Cars" subsidiaries. Defendant A. Gregory Eaton and Plaintiff Cullan Meathe were shareholders, officers, and directors of Metro Group, with Eaton owning 51% and Meathe owning 49% of Metro Group's stock. Meathe also owns 100% of Plaintiff Yellow Cab Service Corporation of Florida, Inc. ("Yellow Cab"), a Florida corporation that provides similar transportation services in the state of Florida. Defendant Daniel Ret is the former Chief Executive Officer of Metro Group subsidiary Metro Cars, Inc. and former Chief Operating Officer of Yellow Cab.

Nos. 12-2479, 12-2507
Meathe, et al. v. Ret, et al.

Two contracts form the basis of Meathe's breach-of-contract claims. First, Ret was subject to a Non-Compete Agreement with Metro Group and its "affiliates." Eaton released Ret from the non-compete agreement by a termination agreement dated June 4, 2009, signed by Ret and Eaton. Second, Meathe, Eaton, and Metro Group were all party to a Stock Restriction Agreement that restricted the alienability of the corporation's shares and gave the shareholders the option to purchase the other shareholder's shares upon certain triggering events.

Metro Group, Yellow Cab, and their various subsidiaries obtained financing from the Bank of Montreal and other secured parties ("the Bank Group"). After Metro Group defaulted on the loans, the Bank Group accelerated the loans and demanded payment on all outstanding obligations owed under the credit agreement, which had a principal balance of approximately $42 million as of December 31, 2008. The Bank Group decided to exercise their rights under the security agreement by auctioning off the assets of Metro Group at a public auction. Both Meathe and Eaton attempted to participate in the auction. On May 22, 2009, Eaton qualified as a bidder and signed a letter agreement with the Bank to purchase the Metro Group assets for $3,627,000 if there were not a higher bid. Meathe, in contrast, did not meet the requirements to be a qualified bidder, due to his financial troubles.

On June 9, 2009, Eaton, Ret, and Gary Sakwa formed Great Lakes Transportation Holding LLC ("Great Lakes"), a Michigan company whose stated purpose was "acquiring and operating substantially all of the assets and operations of Metro Group Holding Company, Inc." Eaton, who had already personally qualified to bid at the auction, agreed to bid on behalf of Great Lakes.

- 3 -

At the auction, the Bank Group accepted a $3,727,000 bid by Great Lakes as the winning bid. During the auction, the only other active bidder contested the eligibility of Great Lakes as a qualified bidder, arguing that certain members of Great Lakes were restricted by non-compete agreements with Metro Group. Despite similar protests by Meathe that the Bank Group conducted the auction unfairly by permitting Great Lakes to enter a bid, Meathe and Yellow Cab would later release the Bank Group from any and all claims, including any claims related to the auction of Metro Group's assets. After the auction, the Metro Group assets, along with some trademarks, were transferred to Great Lakes.

Meathe filed the complaint for the present case, alleging in numerous counts that Ret and Eaton had conspired to devalue Metro Group, prevent Meathe from bidding at the auction, and acquire all of Metro Group's assets at auction. The court entered an order staying the case because of a related trademark case pending in the Southern District of Florida. *See Great Lakes Transp. Holding LLC v. Yellow Cab Serv. Corp. of Fla.*, No. 10-80241-CIV, 2011 WL 465507 (S.D. Fla. Feb. 4, 2011). Ret filed an answer on the day the stay was lifted. Shortly thereafter, Ret filed a motion for summary judgment, and Meathe filed a motion to disqualify Ret's counsel. The court denied Meathe's motion to disqualify Ret's counsel. Afterwards, Meathe filed a motion to amend the complaint by (1) adding two new claims, one for declaratory judgment regarding equitable defenses for trademark infringement and the other for breach of contract, and (2) modifying the count for silent fraud.

- 4 -

*Nos. 12-2479, 12-2507*
*Meathe, et al. v. Ret, et al.*

The district court dismissed the entire case by denying Meathe's motion to amend and granting the defendants' motion for summary judgment. *Meathe v. Ret*, 903 F. Supp. 2d 507, 521 (E.D. Mich. 2012). The district court denied the motion for leave to amend on the ground that the requested amendments were futile: the declaratory judgment action had already been raised in the trademark case where it properly belonged, *id.* at 516 & n.4, the new breach-of-contract claim, which was based on an informal promise to transfer a one-half interest of a Metro Group subsidiary to Meathe, failed to satisfy the *Iqbal* standards for plausibility, *id.*, and Meathe lacked standing to bring the silent fraud claim for an injury to Metro Group's rights, *id.* at 517. The district court also chided Meathe for waiting until after the defendants' motion for summary judgment before bringing an additional related claim. *Id.* at 516–17.

The district court next dismissed the six remaining counts from the original complaint.[1] The court dismissed the two breach-of-contract counts and the counts for breach of fiduciary duty and lost profits and opportunities on the ground that Meathe lacked standing to bring a direct shareholder suit to assert Metro Group's corporate rights. *Id.* at 517–19, 521. The district court dismissed the shareholder oppression claim because Meathe lacked standing as a "current shareholder" since the corporation had been dissolved. *Id.* at 520–21.

---

[1] Because Meathe failed to respond to Ret's motion for summary judgment on seven other counts, those counts were summarily dismissed. *See* 903 F. Supp. 2d at 517 n.5.

- 5 -

*Nos. 12-2479, 12-2507*
*Meathe, et al. v. Ret, et al.*

Meathe timely appealed. The defendants cross-appealed, claiming that the district court abused its discretion by failing to award sanctions against Meathe or even to address Ret's request for sanctions.

For the reasons given in the district court's well-reasoned opinion based on established Michigan corporate law, Meathe lacked standing to pursue almost all of his claims directly as a shareholder, and therefore his failure to bring the action as a shareholder's derivative suit warranted summary judgment in Ret's favor. Although we do not rely on the district court's reasoning that Meathe lacked standing to pursue his shareholder oppression claim, dismissal of that claim was warranted on the alternative ground that Meathe failed to allege an injury for which the district court could provide a remedy. However, the district court should have addressed the defendants' request for sanctions against Meathe's counsel under 28 U.S.C. § 1927. and exercised its discretion in that regard.

The district court did not abuse its discretion in denying Meathe's motion for leave to amend the complaint. This court "review[s] the denial of a motion to amend under the abuse-of-discretion standard, unless the motion was denied because the amended pleading would not withstand a motion to dismiss, in which case the standard of review is de novo." *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010). Although the district court denied the motion in part because "the amendments appear to be a continued effort by plaintiffs to delay adjudication and unduly burden defendants," the court denied the motion primarily because the "motion to amend is futile"—that is, the underlying claims would not survive a motion to dismiss pursuant to Rule 12(b)(6). *Meathe*, 903

- 6 -

*Nos. 12-2479, 12-2507*
*Meathe, et al. v. Ret, et al.*

F. Supp. 2d at 517. Because even under de novo review, the amended and additional claims would not survive a motion to dismiss, the district court properly denied Meathe's motion to amend.

First, the amendment to include a claim for a declaratory judgment on issues of acquiescence and laches regarding the trademark dispute is futile because the claim was a compulsory counterclaim in the companion trademark infringement suit. *See Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 211 F.R.D. 312, 317 (N.D. Ohio 2002). In *Polymer Industries*, the district court, applying the Sixth Circuit standard, concluded that a claim for infringement is a compulsory counterclaim in a suit for declaratory judgment of non-infringement, since the two claims involve the same "issues of law and fact" and "the same evidence." *Id.* (citing *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 277 (6th Cir. 1991)). For the same reasons, Meathe's declaratory judgment claims were compulsory in the related trademark infringement suit and therefore could not be brought in this separate action.

Second, the new breach-of-contract claim is futile because it fails to assert a legally enforceable contract. As the district court noted, "plaintiff merely recites that Eaton promised, and failed to, transfer a one-half interest of Metro Cars–Grand Rapids," which is simply a "bare-boned allegation." *Meathe*, 903 F. Supp. 2d at 516. The only factual assertion Meathe makes in support of this claim is that "Defendant Eaton *promised* to transfer a one-half interest to Plaintiff Meathe in Metro Cars of Grand Rapids on completion of the government investigation." It is commonplace that a mere promise is legally unenforceable.

-7-

*Nos. 12-2479, 12-2507*
*Meathe, et al. v. Ret, et al.*

Third, the proposed modification of the silent fraud claim is futile because it does not correct the basic underlying failures of the original claim, namely that Meathe lacks standing to assert the claim to enforce corporate rights. Meathe's lack of standing for that claim (among others) is discussed below.

The district court did not err in granting summary judgment for Ret on five of the six remaining claims, which were required to be brought derivatively. This court reviews a district court's grant of summary judgment de novo. *Road Sprinkler Fitters Local Union No. 669 v. Dorn Sprinkler Co.*, 669 F.3d 790, 793 (6th Cir. 2012). Summary judgment is proper only if the movant shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party." *Road Sprinkler Fitters*, 669 F.3d at 793.

The district court was correct to dismiss five of Meathe's claims on the ground that Meathe lacked standing to bring a direct shareholder suit: Counts II (breach of non-compete agreement), III (interference of contracts); IV (civil conspiracy), VI (breach of fiduciary duty), and XIII (silent fraud). The dismissal of these claims is justified on the singular principle of Michigan corporate law that "a suit to enforce corporate rights or to redress or prevent injury to a corporation, whether arising from a contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee." *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271, 278 (Mich. Ct. App. 2003).

- 8 -

Nos. 12-2479, 12-2507
*Meathe, et al. v. Ret, et al.*

Meathe fails to allege that Ret and Eaton violated any duties to the shareholders, rather than general duties to the corporation and the shareholders together. In order to have standing to sue, Meathe would have to allege an injury that "amounts to a breach of duty owed to the individual personally," which is required for a shareholder to have standing to sue a corporation directly. *Mich. Nat'l Bank v. Mudgett*, 444 N.W.2d 534, 536 (Mich. Ct. App. 1989). Instead, all of Meathe's direct shareholder claims are premised on damage both to him and the corporation. Meathe's complaint fails to allege any injury distinct from that of Metro Group. For instance, the statement of damages for Count I in paragraph 131 of the First Amended Complaint enumerates only damages suffered by the corporation:

> As a direct and proximate result of these and other breaches of the Non-Compete Agreement, Plaintiff Meathe for himself and as a representative of Metro Group was damaged in the following non-exclusive fashion:
> (a) The value of Metro Group was eviscerated and, thereby, the value of Plaintiff Meathe's shares became worthless;
> (b) The ability of Metro Group to continue in operation and to create future profits, obtain new business opportunities, and continue to service present and new customers and clients was destroyed; and
> (c) Metro Group has incurred attorney fees, costs, and expenses to enforce its rights under the Non-Compete Agreement . . . .

The other counts similarly fail to distinguish Meathe's injuries from those of Metro Group. A recent unreported Michigan Court of Appeals case reads these requirements for an injury or duty unique to the shareholder quite narrowly, stating that the exceptions "do not apply when the acts complained of result in damage *both to the corporation and to the individual.*" *Lozowski v. Benedict*, No. 257219, 2006 WL 287406, at *3 (Mich. Ct. App. Feb. 7, 2006) (emphasis added). Meathe's

*Nos. 12-2479, 12-2507*
*Meathe, et al. v. Ret, et al.*

pleadings clearly fail to allege the kind of injury, one personal to the shareholder, that is required to bring a direct shareholder suit under Michigan corporate law's standing doctrine.

It is true that Michigan law recognizes two exceptions to this principle. An individual shareholder may bring a direct action (1) "when he has sustained a loss separate and distinct from that of other stockholders generally," *Christner v. Anderson, Nietzke & Co., PC*, 444 N.W.2d 779, 783 (Mich. 1989); and (2) if the individual "can show a violation of a duty owed directly to the individual that is independent of the corporation," *Belle Isle Grill*, 666 N.W.2d at 278. However, Michigan case law indicates that those are extremely narrow exceptions. "The exception does not arise merely because the alleged violation resulted in injury to both the corporation and the individual; rather, it is limited to cases in which there is a breach of duty that is owed to the individual personally." *Id.* at 278–79. An example of how limited these exceptions are is found in *Christner*, in which the Michigan Supreme Court held that a shareholder's injuries were "distinct," and thereby warranted an individual shareholder action, where all shareholders except the plaintiff received a distribution during liquidation. 444 N.W.2d at 783.

*Miller v. Magline, Inc.*, 256 N.W.2d 761 (Mich. 1977), cited by *Gaff v. Federal Deposit Insurance Corp.*, 828 F.2d 1145, 1151 (6th Cir. 1987), supports this conclusion. *Miller* involved an action by minority shareholders to compel payment of a dividend and recover excessive compensation paid to corporate officers. 256 N.W.2d at 762. The court understood the suit to be a hybrid direct-and-derivative action: the "claim to recover, *for the corporation*, excessive compensation . . . is a classic example of a shareholder's *derivative* suit," *id.* at 764 (emphasis

- 10 -

*Nos. 12-2479, 12-2507*
*Meathe, et al. v. Ret, et al.*

added), while the claim to compel payment of a dividend is a direct suit by the shareholders arising out of a fiduciary duty to pay dividends to shareholders, *see id.* at 769. The *Miller* court distinguished between general duties to the corporation, which indirectly benefit the shareholders, and certain limited duties owed directly to the shareholders. Meathe fails to allege a duty of the latter variety, and so his claim should have been brought derivatively.

As to the one remaining claim, Meathe's minority shareholder oppression claim should have been dismissed at summary judgment because Meathe failed to allege an injury to his interests as a shareholder that would entitle him to any relief. Meathe admits that "Metro Cars was going to be done and out of business whether or not the auction proceeded." Michigan law requires that during the winding up period that follows dissolution, a corporation must "make provision for its debts, obligations, and liabilities" before making any distribution of assets to shareholders. Mich. Comp. Laws § 450.1855a. Now that Metro Group is completely defunct, the only remedy that Meathe could request would be damages for the loss of any shareholder distributions. *See id.* § 450.1489(1)(a)–(f) (listing remedies for shareholder oppression claims). At the time Metro Group defaulted on its loan, the account had an outstanding balance of $42,072,316.95 excluding interest, fees, and expenses. Metro Group's assets were sold for a fraction of the amount of its outstanding obligations, a mere $3.727 million. Meathe's allegations simply do not establish with any plausibility that were it not for Ret and Eaton's allegedly oppressive actions the nearly $40 million gap between obligations and assets would have been covered by additional corporate value. Since the company was so far under water, Meathe's shares were in all likelihood totally worthless and

- 11 -

*Nos. 12-2479, 12-2507*
*Meathe, et al. v. Ret, et al.*

Meathe was entitled to no shareholder distribution whether or not Ret and Eaton actually conspired to devalue the company. Since Meathe has failed to demonstrate that he suffered any injury as a shareholder, the district court was correct to dismiss the claim.

In addition, Meathe's argument that he was harmed by being disqualified from bidding is completely spurious. Meathe cites no law to establish that a shareholder has a right to bid at an auction of corporate assets. Indeed, Meathe admits he was not qualified under the bank's auction rules, and he even released the Bank Group of any claims related to the auction. Since Meathe may only pursue a shareholder oppression claim to protect "interests of the shareholder *as a shareholder*," he has no right to complain of the auction process through such a claim. Mich. Comp. Laws § 450.1489(3) (emphasis added); *see also Franchino v. Franchino*, 687 N.W.2d 620, 629–30 (Mich. Ct. App. 2004).

Finally, with respect to the cross-appeal, the district court erred in entirely failing to address the issue of sanctions after Ret squarely presented before the court the close issue of whether sanctions against Meathe were warranted. Ret requested sanctions against Meathe for violating 28 U.S.C. § 1927, which states, "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Ret raised this issue in his brief opposing Meathe's motion for leave to amend the complaint. In disposing of Meathe's motion, the district court did not mention sanctions at all. In the context of this case, the district court should not have failed to mention sanctions, in light of statements by the district court

- 12 -

*Nos. 12-2479, 12-2507*
*Meathe, et al. v. Ret, et al.*

suggesting that Meathe's counsel had indeed multiplied the proceedings unreasonably and vexatiously.

In this case the issue of whether sanctions are warranted was close enough to warrant at least some discussion by the district court. Under our precedents, "[t]he proper inquiry is not whether an attorney acted in bad faith; rather, a court should consider whether an attorney knows or reasonably should know that a claim pursued is frivolous." *Hall v. Liberty Life Assur. Co. of Bos.*, 595 F.3d 270, 275 (6th Cir. 2010). There are reasons to believe that Meathe's attorney should reasonably have known that Meathe's claims were frivolous: all of Meathe's claims were futile and he even attempted to request a declaratory judgment for an equitable defense that had already been voluntarily dismissed in the case in which it belonged. Indeed, as Ret points out, the district court questioned the merits of the case and its purpose on multiple occasions. The court called the allegations "imaginary," characterized the case as a "smoke screen, an imaginative way of avoiding a claim of infringement," and called the motion to disqualify "close to a perverse use of disqualification."

As here, when the issue of sanctions is close and the district court fails to address the issue, a remand may be appropriate. In *United States ex rel. Williams v. Renal Care Group., Inc.*, we noted that "[w]e have previously remanded close questions regarding a motion for sanctions if the district court's denial of sanctions lacks explanation." 696 F.3d 518, 526 (6th Cir. 2012). In *Michigan Division-Monument Builders of North America v. Michigan Cemetery Ass'n*, we stated that "this court has required an analysis and discrete findings in close or serious sanction cases, an approach

- 13 -

*Nos. 12-2479, 12-2507*
*Meathe, et al. v. Ret, et al.*

that makes particular sense when the explanation for the ruling is not otherwise apparent from the record." 524 F.3d 726, 740 (6th Cir. 2008) (internal quotation marks omitted) (citation omitted). In contrast, in another case the issue of sanctions was deemed "not so close . . . that the district court's lack of explanation constitute[d] an abuse of discretion." *Moross Ltd. P'ship v. Fleckenstein Capital, Inc.*, 466 F.3d 508, 520 (6th Cir. 2006). Because of the lack of merit of many of Meathe's claims and the court's espoused skepticism of the meritoriousness and propriety of the case, a limited remand is warranted in this case in order for the district court to determine in the first place whether sanctions should be imposed against Meathe's counsel.

Meathe's argument that the subject of sanctions was never placed squarely before the lower court are flawed. A separate motion is not necessarily required to request § 1927 sanctions. Cases regarding the separate motion requirement for Rule 11 sanction are not applicable. Ret placed the issue of sanctions before the district court by raising it in the statement of issues in his brief opposing Meathe's motion to amend and devoting an entire two-page section of the brief to make the case for sanctioning Meathe's counsel.

In Meathe's appeal No. 12-2479, we affirm the judgment of the district court. In the cross-appeal No. 12-2507, we vacate and remand for further consideration in light of this opinion.

- 14 -